IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHANT ENGINEERING CO. INC.** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 20-4559** |
| **v.** | : | |
| | : | |
| **CUMBERLAND SALES COMPANY,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                         FEBRUARY 26, 2021

# MEMORANDUM OPINION

**INTRODUCTION**

Before this Court is a *motion to dismiss for lack of personal jurisdiction*, filed by Defendant Cumberland Sales Company ("Cumberland"), [ECF 39], which Plaintiff Chant Engineering Co. Inc. ("Plaintiff" or "Chant") has opposed. [ECF 49].[1] In its motion, Cumberland argues that this Court lacks general and specific personal jurisdiction over it because it is not "at home" in Pennsylvania, as required by the seminal Supreme Court decision *Daimler AG v. Bauman*, 571 U.S. 117 (2014), and because Plaintiff's claims do not arise out of any contacts Cumberland has or had with Pennsylvania. The issues presented in the motion have been fully briefed and are ripe for disposition.[2] After careful consideration and for the reasons set forth herein, Cumberland's motion is granted.

---

[1] The other defendants in this action have each filed their own motions to dismiss. Those motions will be addressed in separate opinions.

[2] In adjudicating this motion, this Court has also considered Cumberland's reply. [ECF 57].

**BACKGROUND**[3]

In 2013, Philip Chant, President of Chant Engineering Co. Inc. (a Pennsylvania entity), and Patrick Poe, then-President of Cumberland (a Tennessee entity), began discussing the possible sale of Cumberland's various assets, in particular, Cumberland's intellectual property rights in certain equipment. The parties' negotiations primarily occurred through emails and telephone calls from and to the parties' respective locations in Tennessee and Pennsylvania. During these negotiations, no one from Cumberland ever traveled to Pennsylvania. However, Mr. Chant, on Plaintiff's behalf, traveled to Tennessee on multiple occasions.

On April 15, 2014, Chant and Cumberland entered into an Asset Purchase Agreement, pursuant to which Cumberland sold Chant certain intellectual property rights to various equipment and Cumberland's "customer lists, sales leads, quotes, etc." As part of the agreement, Cumberland agreed not to compete with Chant for a defined period of time and to refer future business inquiries for the referenced equipment to Chant.

On August 1, 2016, Matthew Cheek (who is not a party to this lawsuit) purchased the stock of Cumberland from its previous owner, Patrick Poe. Since that date, Poe has had no interest in, or held any position with, Cumberland. Under its current ownership, Cumberland specializes in the distribution of wire rope and industrial hardware, and does not design, manufacture, or sell equipment of any kind.

In the amended complaint, Plaintiff alleges that Cumberland, along with Defendants Patrick and Patricia Poe, breached the Asset Purchase Agreement by (1) designing, manufacturing, and selling equipment that was associated with the rights sold through the agreement, (2) using customer lists transferred to Plaintiff, and (3) failing to refer business to Plaintiff. Plaintiff also alleges that Cumberland made various misrepresentations in the Asset Purchase Agreement, and produced works in violation of Plaintiff's copyright in specific technical drawings Plaintiff acquired by the Asset Purchase Agreement.

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2), a defendant may move to dismiss a claim for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Once a defendant has

---

[3] The facts relevant to the issue of personal jurisdiction are set forth herein. Where undisputed, the facts are taken from the parties' pleadings and supporting declarations. Where the facts are disputed, they are construed in Plaintiff's favor.

raised a lack of jurisdiction defense, the burden shifts to the plaintiff to present a *prima facie* case establishing jurisdiction over the non-resident defendant in the forum. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *see also Miller Yacht Sales, Inc., v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) ("[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction."). The plaintiff has the burden to show, "with reasonable particularity," enough contact between the defendant and the forum state to support the exercise of personal jurisdiction by the forum state. *Mellon Bank v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal citations omitted); *see also Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 418 (E.D. Pa. 2005) ("In order to establish a *prima facie* case, the plaintiff must present specific facts that would allow the court to exercise jurisdiction over the defendant.").

In determining the existence of personal jurisdiction, courts "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker*, 292 F.3d at 368. Once the plaintiff's "allegations are contradicted by an opposing affidavit . . . [the plaintiff] must present similar evidence in support of personal jurisdiction." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009). To counter opposing affidavits, "[p]laintiffs may not repose upon their pleadings []. Rather, they must counter defendant['s] affidavits with contrary evidence in support of purposeful availment jurisdiction." *Id*. at 559. To that end, the "plaintiff must respond to the defendant's motion with 'actual proofs;' 'affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry.'" *Lionti v. Dipna, Inc.*, 2017 WL 2779576, at *1 (E.D. Pa. June 27, 2017) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)).

**DISCUSSION**

As noted, Cumberland is a corporate entity incorporated and maintaining its principal place of business in Tennessee. Cumberland moves to dismiss this action based on the lack of requisite sufficient minimum contacts with Pennsylvania to support personal jurisdiction in this forum. Cumberland has offered the sworn declaration of its sole stockholder and chief executive officer, Matthew Cheek, in which Mr. Cheek attests that, *inter alia*, Cumberland is neither incorporated in, nor maintains a principal place of business in, Pennsylvania. Plaintiff has not contested these jurisdictional facts[4] but has instead relied primarily on Cumberland's conduct in entering into a contract with Plaintiff to argue that these contacts are sufficient to sustain personal jurisdiction over Cumberland. Plaintiff's reliance, however, is misplaced.

A federal court may assert jurisdiction over a nonresident of the forum state to the extent authorized by the law of the forum; here, Pennsylvania. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). Pennsylvania's long-arm statute grants jurisdiction coextensive with that permitted by the due process clause of the Fourteenth Amendment of the United States Constitution. *Id.*; *see also* 42 Pa. Cons. Stat. § 5322(b). Therefore, this Court's analysis must focus on federal due process requirements. *Applied Tech. Int'l, Ltd. v. Goldstein*, 2004 WL 2360388, at *2 (E.D. Pa. Oct. 20, 2004). A court's constitutional inquiry is guided by the "minimum contacts" test established in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). Under this standard, a plaintiff must show that a nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (internal quotations and citation omitted); *see also Marten v. Godwin*,

---

[4] Indeed, the allegations contained in Plaintiff's own amended complaint confirm that Cumberland is neither incorporated in, nor maintains a principal place of business in, Pennsylvania. (*See* Am. Comp., ECF 36, at ¶ 6).

499 F.3d 290, 296 (3d Cir. 2007). The focus of the minimum contacts analysis is "the relationship among the defendant, the forum, and the litigation," *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977), such that the defendant has fair warning that it may be subject to suit in that forum. *Marten*, 499 F.3d at 296.

A federal court must have one of two forms of personal jurisdiction to comport with these principles: either general jurisdiction or specific jurisdiction. *See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-15 (1984)). General jurisdiction allows a court to exercise its jurisdiction over any party that possesses "continuous and systematic" contacts with the forum state, regardless of whether the claim arises out of the party's forum-related activities. *Helicopteros*, 466 U.S. at 415 n.9; *Marten*, 499 F.3d at 296. Where the cause of action has no relation to a corporate defendant's contacts with the forum, general jurisdiction may only be asserted over the corporate defendant if the corporate defendant's "affiliations with the [s]tate are so 'continuous and systematic' as to render them essentially at home in the forum [s]tate." *Daimler*, 571 U.S. at 128 (quoting *Goodyear Dunlop Tires Operations*, *S.A. v. Brown*, 564 U.S. 915, 923 (2011)) (quotation marks omitted); *see also Helicopteros*, 466 U.S. at 414.

"The 'paradigm' forums in which a corporate defendant is 'at home,' . . . are the corporation's place of incorporation and its principal place of business . . . ." *BNSF Ry. Co. v. Tyrrell*, __ U.S. __, 137 S. Ct. 1549, 1552 (2017) (citing *Daimler*, 134 S. Ct. at 760); *see also Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016). In addition to the two paradigm bases, general jurisdiction may also arise in the "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571

5

U.S. at 139 n.19.  Applying the *Daimler* analysis, the United States Court of Appeals for the Third Circuit (the "Third Circuit") has held that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business."  *Chavez*, 836 F.3d at 223 (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)); *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) ("[I]n our view *Daimler* established that, except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business—the 'paradigm' cases.") (citation omitted).

Alternatively, specific jurisdiction allows the court to hear claims that arise from or relate to the party's contacts with the forum state, such that the defendant should reasonably anticipate being hailed into court in that forum.  *Helicopteros*, 466 U.S. at 414 n.8; *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006).  In determining whether there is specific jurisdiction over a nonresident defendant, courts undertake a three-part inquiry.  *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007).  "First, the defendant must have 'purposefully directed his activities' at the forum."  *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  Second, the plaintiff's claim must "arise out of or relate to" at least one of those purposefully directed activities.  *Helicopteros*, 466 U.S. at 414.  Third, if the first two requirements are met, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise "comport[s] with fair play and substantial justice."  *Burger King*, 471 U.S. at 476 (internal citations omitted); *see also O'Connor*, 496 F.3d at 317.

### *General Jurisdiction*

As noted, Cumberland contends that it has insufficient minimum contacts with Pennsylvania to support personal jurisdiction in this forum.  Cumberland is neither incorporated

6

in, nor maintains a principal place of business in, Pennsylvania.  In response, Plaintiff argues that this Court can exercise general jurisdiction over Cumberland based on the mere existence of a contractual relationship between Plaintiff and Cumberland, and because of Cumberland's purported "consistent sales" in Pennsylvania.  (Pltf. Resp., ECF 49, at p. 22).  Under the legal framework described above, this Court disagrees with Plaintiff.

Because Cumberland is neither incorporated, nor maintains a principal place of business, in Pennsylvania,  Pennsylvania is not a "paradigm" forum where Cumberland is "at home" for the purposes of personal jurisdiction.  *Daimler*, 571 U.S. at 122*.*  Nevertheless, Plaintiff argues that general jurisdiction can be exercised over Cumberland because it has admitted having "consistent sales" in Pennsylvania since 2014.  Plaintiff contends that these "consistent sales" in Pennsylvania constitute the requisite "continuous and systematic" contacts for the exercise of general jurisdiction.  Plaintiff, however, is mistaken.

Notably, in support of this argument, Plaintiff ignores the *Daimler* progeny that narrows general jurisdiction over corporate entities to the forum in which the entity is "at home." Regardless, in the post-*Daimler* legal landscape, the mere fact that an out-of-state entity transacts business in Pennsylvania, even *substantial* business, is insufficient to establish that the entity is "at home" in Pennsylvania.  *See*, *e.g.*, *Daimler*, 571 U.S. at 138 (emphasizing that even "engage[ment] in a substantial, continuous, and systematic course of business" alone is insufficient to render an entity at home in a forum); *Spear v. Marriott Hotel Servs., Inc.*, 2016 WL 194071, at *3 (E.D. Pa. Jan. 15, 2016) ("Applying the considerations of *Daimler* and *Goodyear*, the mere allegation that defendants operate in the State does not render defendants 'at home' in Pennsylvania and subject it to general jurisdiction here."); *Campbell v. Fast Retailing USA, Inc.*, 2015 WL 9302847, at *2-3 (E.D. Pa. Dec. 22, 2015) (citing *Daimler* and holding that "[t]he allegation that an entity transacts

business, even substantial business, in Pennsylvania is insufficient to establish that it is essentially 'at home' in Pennsylvania."); *Farber v. Tennant Truck Lines, Inc.*, 84 F. Supp. 3d 421, 432 (E.D. Pa. 2015) ("A corporation is *not* 'at home' in every state in which it engages in a substantial, continuous, and systematic course of business.'"). Indeed, the Supreme Court has held that regularly occurring sales to a forum state cannot subject a nonresident defendant to general jurisdiction. *See Goodyear*, 131 S. Ct. at 2852, 2856-57. Specifically, in *Goodyear*, the Supreme Court concluded that even "tens of thousands" of a foreign manufacturer's tires entering the forum over a three-year period was insufficient to trigger general jurisdiction because, despite those sales, the foreign corporation was not regarded as "at home" in that state. *Id*. In *Daimler*, the Supreme Court held that despite the fact that ten percent of a nonresident defendant's sales occurred within the forum state, such sales did not render Daimler "at home" in the forum. *Daimler*, 571 U.S. at 139.

Under these binding precedents, this Court finds that Plaintiff's allegation of Cumberland's purported "consistent sales" fails to show that Cumberland is "essentially at home" in Pennsylvania, as required under *Goodyear* and *Daimler*. *See Daimler*, 571 U.S. at 122 (explaining that regional offices are not enough to consider a corporation "at home" in a forum in which it does not have its principal place of business or its place of incorporation); *see also Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014) (noting *Daimler* makes it "clear that even a company's engage[ment] in a substantial, continuous, and systematic course of business is alone insufficient to render it at home in a forum") (internal citation and quotations omitted); *Krishanti v. Rajaratnam*, 2014 WL 1669873, at *7 (D.N.J. Apr. 28, 2014) ("It is clear from *Daimler* that the physical presence of a corporation in a state does not necessarily render the corporation 'at home' in that state."). Because Plaintiff has failed to make a showing that

8

Cumberland's contacts with Pennsylvania "are so continuous and systematic as to render it essentially at home in this state," *Daimler*, 571 U.S. at 139 (internal quotations and citation omitted), this Court lacks general jurisdiction over Cumberland.

### *Specific Jurisdiction*

Plaintiff also argues that this Court should exercise specific jurisdiction over Cumberland. As noted, specific jurisdiction allows the Court to hear claims that arise from or relate to the defendant's contacts with the forum state, such that the defendant should reasonably anticipate being hailed into court in the forum state. *Helicopteros*, 466 U.S. at 414 n.8. It is well-settled that whether a court has specific jurisdiction over a defendant must be determined on a claim-by-claim basis. *See Marten*, 499 F.3d at 296 (citing *Remick*, 238 F.3d a 255-56). Accordingly, this Court will determine whether specific jurisdiction over Cumberland exists as to each of Plaintiff's claims against it.[5]

### *Plaintiff's Contract Claims*

In determining whether a court has specific jurisdiction over contract claims, courts consider "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick*, 238 F.3d at 256 (citations omitted). While a defendant having a contract with a resident of the forum state is relevant to the jurisdictional analysis, "[t]he mere existence of a contract is insufficient to establish minimum contacts." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 261 (3d Cir. 2008) (citing *Burger King*, 471 U.S. at 478); *see also Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 333

---

[5] In cases involving multiple claims and defendants, the Court may evaluate jurisdiction by individual defendant and claim, or may group the analysis of "certain factually overlapping claims" when appropriate. *O'Connor*, 496 F.3d at 318 n.3; *see also Remick*, 238 F.3d at 255. Given the nature of the facts under which Plaintiff's claims arise, this Court will evaluate jurisdiction for all of Plaintiff's contract claims together and all of Plaintiff's tort claims together.

n.7 (3d Cir. 2009) ("[A] contract, 'without more, is insufficient to establish minimum contacts,' as are 'informational communications' in furtherance of a contract.") (citations omitted); *Sunbelt Corp. v. Noble, Denton & Assoc., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993) ("It is well established, however, that a nonresident's contracting with a forum resident, without more, is insufficient to establish the requisite 'minimum contacts' required for an exercise of personal jurisdiction over the nonresident.") (citations omitted).

Cumberland argues that it does not have the requisite contacts with Pennsylvania to establish specific jurisdiction over Plaintiff's contract claims. In support of its argument, Cumberland contends—and Plaintiff does not refute—that *Plaintiff* initiated the business discussions that culminated in the Asset Purchase Agreement. Cumberland's former owner, Mr. Poe, never traveled to Pennsylvania to negotiate any part of the agreement. Mr. Chant, on behalf of Plaintiff, on the other hand, traveled to Tennessee several times to negotiate the purchase and sale of Cumberland's assets, which were located in Tennessee. Plaintiff sent the closing documentation for the transaction to Cumberland in Tennessee for execution. Pursuant to the agreement, the closing took place at Cumberland's office in Tennessee.

Though not refuting any of Cumberland's jurisdictional facts, Plaintiff contends that the parties' negotiations were mostly conducted by telephone and email while Plaintiff was located in Pennsylvania, a fact known to Cumberland. Plaintiff also points to the fact that the Asset Purchase Agreement contains a choice of law provision, selecting Pennsylvania law to govern the contract. To that end, Plaintiff argues that this Court can exercise specific jurisdiction over its contract-based claims because Cumberland knew it was dealing with a Pennsylvania entity, and because the Asset Sales Agreement and any claims arising therefrom are to be governed by Pennsylvania law. Plaintiff is mistaken.

At the outset of its analysis, the Court reiterates the well-settled law that "[m]erely entering into a contract with a forum resident does not subject a nonresident to personal jurisdiction." *Quandel Grp. v. Chamberlin Co., Inc.,* 1999 WL 382878, at *2 (E.D.Pa. June 14, 1999) (citations omitted). Rather, when assessing whether minimum contacts are present in a contract case, a court should look to "the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties." *Mellon Bank,* 960 F.2d at 1223.

Here, the Asset Purchase Agreement provided for the sale of Cumberland's intellectual property, and the rights associated therewith, to Plaintiff. Those assets were located in Tennessee. The agreement did not provide for, or contemplate, Cumberland's performance of any acts and/or services in Pennsylvania; it merely provided for the sale of Cumberland's intellectual property to Plaintiff. Though the agreement contains a choice of law provision, selecting Pennsylvania law, no other terms of the agreement are directed at Pennsylvania. The mere existence of a choice of law provision, however, does not establish jurisdiction, particularly where there is nothing else in the agreement to establish a connection with Pennsylvania. *Quandel Grp.,* 1999 WL 382878, at *3; *see also Hampton-Meridian Grp., Inc. v. Venturella*, 2008 WL 2446697, at *6 (W.D. Pa. June 16, 2008) (holding that a choice of law provision, even combined with other contacts, was insufficient to establish specific jurisdiction over defendant). In sum, the terms of the Asset Purchase Agreement themselves do not establish specific jurisdiction over Cumberland.

This Court next turns to Plaintiff's argument concerning Cumberland's emails and telephone calls. Plaintiff correctly observes that telephone and email communications sent by Cumberland to a forum resident "may count toward the minimum contacts that support jurisdiction." *Grant Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir.

1993). The Third Circuit has repeatedly held, however, that "informational communications in furtherance of [a contract between a resident and a nonresident] [do] not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant].'" *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.,* 75 F.3d 147, 152 (3d Cir. 1996) (holding that where the only contacts with forum state were letters and phone calls to resident seller, nonresident was merely "passive buyer" and no personal jurisdiction existed) (internal quotations and citations omitted); *see also IMO Indus.,* 155 F.3d at 259 n.3 ("Minimal communication between the defendant and the plaintiff in the forum state, without more, will not subject the defendant to the jurisdiction of that state's court system."); *SMB Consulting & Investing LLC v. Apple Valley Waste Serv., Inc.*, 2011 WL 2937432, at *3 (E.D. Pa. July 21, 2011) (holding that defendant's mail and telephone communications with plaintiff in Pennsylvania were not sufficient to find personal jurisdiction, even in conjunction with defendant's contract with plaintiff that was executed in Pennsylvania).

Here, although Cumberland may have sent numerous emails and made several telephone calls in furtherance of the contract, Plaintiff has not asserted how those communications establish any kind of connection with Pennsylvania, other than the fact that Plaintiff received those communications in Pennsylvania. A plaintiff's presence in the forum state during phone or digital communications regarding an employment contract does not equate to defendant's reaching into the forum, even when the defendant is aware of the plaintiff's location in the forum. *See Randall v. Davin*, 2013 WL 6191344, at *5 (W.D. Pa. Nov. 26, 2013) (holding that a defendant "cannot be found to have purposefully directed his activities at this jurisdiction by placing a cellular telephone call or sending an email when [defendant] had no control over whether [plaintiff] received it in Cleveland, Ohio, Pittsburgh, Pennsylvania, Knoxville, Tennessee, or somewhere else.").

Furthermore, Plaintiff has not alleged that any of its claims arise from any of these communications. Only when communications themselves form the basis of a plaintiff's claim will they be found to rise to the level of minimum contacts. *See Sunbelt,* 5 F.3d at 33 (finding appellee's telephone calls from Pennsylvania to Texas did not establish jurisdiction in Texas when the calls themselves were not the basis of the cause of action). That is not the case here. Plaintiff's contract claims arise out of purported breaches of various representations made in the agreement itself. As such, the unquantified and unsubstantiated communications surrounding the eventual execution of the Asset Purchase Agreement are insufficient to give this Court specific jurisdiction over Plaintiff's contact-based claims.

### *Plaintiff's Tort Claims*

Plaintiff argues that this Court has specific jurisdiction over Cumberland with regard to Plaintiff's tort claims because those claims "stem from the fact that Cumberland sold all intellectual property rights to the machines to Chant, including the drawings, and the fact that [Defendant] Patrick Poe, in an attempt to defend himself against the count of copyright infringement in the original Complaint, then denied that Chant's copyrights were valid." (Pltf. Resp., ECF 49, at p. 16). As set forth above, however, Cumberland's sale of its intellectual property rights to Plaintiff by way of the Asset Purchase Agreement is insufficient to create specific jurisdiction over Cumberland. Further, it cannot be said that Defendant Poe's purported denial in this litigation that Chant's copyrights were valid somehow constitutes a sufficient contact with Pennsylvania **by Cumberland** (who no longer has any affiliation with Defendant Poe) to establish specific jurisdiction over Cumberland for Plaintiff's tort claims.

Indeed, the allegations underlying Plaintiff's tort claims against Cumberland show that all of Cumberland's alleged conduct took place in, and/or was targeted at, Tennessee—not

Pennsylvania. As alleged, Plaintiff's tort claims are premised on misrepresentations purportedly made by Cumberland in Tennessee when Mr. Chant was there visiting Cumberland's facility. It was during that visit that Cumberland purportedly provided the drawings upon which Plaintiff bases his misrepresentation claims. Thus, Plaintiff's tort claims do not arise out of any of Cumberland's contacts with Pennsylvania but, rather, arise out of contacts Cumberland had *in Tennessee* with a Pennsylvania resident. Under these facts, this Court lacks specific jurisdiction over Cumberland regarding Plaintiff's tort claims.

### *Calder Effects Test*

Although Plaintiff has failed to meet its burden of showing that Cumberland is subject to personal jurisdiction in this forum under the traditional minimum contacts test, this Court's analysis is not complete because Plaintiff has also alleged that Cumberland committed intentional torts. This Court must therefore apply the *Calder* effects test,[6] as articulated by the Third Circuit in *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254 (3d Cir. 1998), to determine whether specific jurisdiction is proper over Cumberland for Plaintiff's intentional tort claims. Under the *Calder* effects test, specific jurisdiction exists over intentional tort claims where a plaintiff shows that: (1) the defendant committed an intentional act; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that act; and (3) the defendant expressly aimed its tortious conduct at the forum such that the forum can be said to be the focal point of the activity. *Id.* at 265-66; *see also Marten*, 499 F.3d at 297.

The *Calder* test is not satisfied by the "mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there." *IMO Indus.*,

---

[6] This test was first articulated by the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984).

155 F.3d at 266. Rather, a plaintiff must "point to other actions that adequately demonstrate [] that the defendants targeted (or 'expressly aimed' their conduct at) the forum." *Id.* "There is a critical difference between an act which has an effect in the forum and one directed at the forum itself . . . absent some conduct by defendant directed at Pennsylvania rather than simply directed at plaintiff, Pennsylvania is not a reasonably foreseeable forum." *Surgical Laser Techs., Inc. v. C.R. Bard, Inc.,* 921 F. Supp. 281 (E.D. Pa. 1996) (granting motion to dismiss for lack of personal jurisdiction notwithstanding foreseeability of harm to plaintiff in Pennsylvania). In addition, "[s]imply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself to meet this requirement." *IMO Indus.*, 155 F.3d at 265.

Typically, satisfying this test requires "some type of 'entry' into the forum by the defendant." *Id.* In cases involving intellectual property (like the case *sub judice*), the Third Circuit opined:

> In *Calder* as in all the other cases that have come to our attention in which jurisdiction over a suit involving intellectual property (when broadly defined to include reputation, so that it includes *Calder* itself) was upheld, the defendant had done more than brought about an injury to an interest located in a particular state. The defendant had also "entered" the state in some fashion, as by the sale (in *Calder*) of the magazine containing the defamatory material.

*Id.* (quoting *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club*, 34 F.3d 410, 412 (7th Cir. 1994)).

Here, Plaintiff's intentional tort claims are premised on Plaintiff's allegation that Cumberland made a false representation in the Asset Purchase Agreement regarding ownership of the intellectual property represented in various drawings being sold to Plaintiff. (Am. Compl. ¶¶ 37, 83-84, 89). To satisfy the *Calder* test, Plaintiff argues that "Cumberland expressly targeted a

15

Pennsylvania corporation by sending emails and edited drawings received by Chant in Pennsylvania; and by entering into an asset purchase agreement, promissory note, and guaranty agreement, which were formed under Pennsylvania laws." (Pltf. Resp., ECF 49, at p. 21). As shown by the allegations in Plaintiff's amended complaint and Mr. Chant's declaration, however, all of the conduct underlying Plaintiff's intentional tort claims occurred in and was directed at Tennessee.

Plaintiff's only reference to drawings in the amended complaint and Plaintiff's declaration refers to drawings made ***before*** execution of the Asset Purchase Agreement, which Plaintiff attests were given to him during one of his visits to Tennessee. (*See* Chant Decl. ¶ 8). As such, the "focal point" of the alleged tortious conduct was clearly Tennessee, not Pennsylvania. As repeatedly recognized, the *Calder* test is not met by simply showing that a defendant engaged in wrongful conduct with an entity known to be located in the forum state. *IMO Indus.*, 155 F.3d at 265. Rather, the defendant's conduct ***itself*** must be targeted at Pennsylvania. *Id.* Here, all alleged tortious conduct occurred in and was directed at Tennessee.[7]

Plaintiff's repeated reliance on emails purportedly sent to Plaintiff in Pennsylvania is also misplaced. As noted above, Plaintiff does not quantify or provide the substance of these emails. Instead, Plaintiff merely relies upon these alleged emails to argue that Cumberland knew that Plaintiff "was talking to [Poe] from Pennsylvania and [he] was receiving and reading his emails in Pennsylvania." (Chant Decl. ¶ 9). Again, such knowledge alone is insufficient to meet the targeting requirements of the *Calder* test. *Id.* Moreover, Plaintiff alleges that the fraudulent misrepresentations were made in the Asset Purchase Agreement itself. (*See* Am. Compl. ¶ 89).

---

[7] In addition, and as discussed above, the fact that Cumberland entered into a contract or contracts governed by Pennsylvania law does not amount to conduct directed at Pennsylvania. *Quandrel, Grp.*, 1999 WL 382878, at *3.

16

Nowhere does Plaintiff allege fraud premised on representations made in any emails targeted at Pennsylvania.  Moreover, without Plaintiff providing the substance of the emails, it cannot be said that they demonstrate Cumberland's "targeting of [Pennsylvania] as the situs of its tortious acts." *IMO Indus.*, 155 F.3d at 267.  As such, and as with Plaintiff's other claims, Plaintiff has not met its burden of establishing specific jurisdiction over Plaintiff's intentional tort claims against Cumberland.[8]

**CONCLUSION**

For the reasons set forth herein, Cumberland's motion to dismiss is granted.  An appropriate Order will follow this Memorandum Opinion.

*NITZA I. QUIÑONES ALEJANDRO*, U.S.D.C. J.

---

[8] In its response, Plaintiff requests leave to conduct discovery targeted to the issue of personal jurisdiction.  No amount of discovery, however, could change the undisputed facts that Cumberland is neither incorporated, nor maintains a principal place of business, in Pennsylvania.  Nor will any discovery change the undisputed fact that Plaintiff's claims do not arise out of any of Cumberland's purported contacts with Pennsylvania.  As such, Plaintiff's request for discovery on this issue is denied.