IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHANT ENGINEERING CO. INC.** : | **CIVIL ACTION** |
| *Plaintiff* : | |
| : | **NO. 20-4559** |
| **v.** : | |
| : | |
| **CUMBERLAND SALES COMPANY,** *et al.* : | |
| *Defendants* : | |

NITZA I. QUIÑONES ALEJANDRO, J.  MARCH 5, 2021

# MEMORANDUM OPINION

**INTRODUCTION**

Before this Court are the *motions to dismiss for lack of personal jurisdiction*, filed by Defendants Moe Machines, LLC ("Moe"), and Evans and Melissa Hood (collectively, with Moe, the "Moe Defendants"), [ECF 40, 41, 44], which Plaintiff Chant Engineering Co. Inc. ("Plaintiff" or "Chant") has opposed. [ECF 50].[1] In their motions, the Moe Defendants argue that this Court lacks general and specific personal jurisdiction over them because they are not "at home" in Pennsylvania, as required by the seminal Supreme Court decision *Daimler AG v. Bauman*, 571 U.S. 117 (2014), and because Plaintiff's claims do not arise out of any contacts the Moe Defendants have or had with Pennsylvania. The issues presented in the motions have been fully briefed and are ripe for disposition. After careful consideration and for the reasons set forth herein, the Moe Defendants' motions are granted.

---

[1] The other defendants in this action have each filed their own motions to dismiss. Those motions have been addressed in separate opinions.

**BACKGROUND**[2]

In 2013, Philip Chant, President of Chant Engineering Co. Inc. (a Pennsylvania entity), and Patrick Poe, then-President of Cumberland (a Tennessee entity), began discussing the possible sale of Cumberland's various assets, in particular, Cumberland's intellectual property rights in certain equipment. On April 15, 2014, Chant and Cumberland entered into an Asset Purchase Agreement, pursuant to which Cumberland sold Chant certain intellectual property rights to various equipment and Cumberland's "customer lists, sales leads, quotes, etc." As part of the agreement, Cumberland agreed not to compete with Chant for a defined period of time and to refer future business inquiries for the referenced equipment to Chant. Subsequent to Plaintiff's acquisition of Cumberland's intellectual property, Plaintiff obtained a copyright for a winder machine, the exclusive rights to which Plaintiff acquired from Cumberland.

Sometime in 2020, Defendants Melissa Hood and Evans Hood, daughter and son-in-law of Defendants Patrick Poe and Patricia Poe (all of whom live in Tennessee), created Defendant MOE Machines, LLC (a Tennessee entity). Plaintiff alleges that the Moe Defendants, along with Patrick and Patricia Poe and Cumberland, manufactured and sold a winder machine substantially identical to that for which Plaintiff obtained a copyright. The Moe Defendants did not pay Plaintiff for a license or other permission to manufacture the equipment.

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2), a defendant may move to dismiss a claim for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Once a defendant has raised a lack of jurisdiction defense, the burden shifts to the plaintiff to present a *prima facie* case establishing jurisdiction over the non-resident defendant in the forum. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *see also Miller Yacht Sales, Inc., v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) ("[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction."). The plaintiff has the burden to show, "with reasonable particularity," enough contact between the defendant and the

---

[2] The facts relevant to the issue of personal jurisdiction are set forth herein. Where undisputed, the facts are taken from the parties' pleadings and supporting declarations. Where the facts are disputed, they are construed in Plaintiff's favor.

forum state to support the exercise of personal jurisdiction by the forum state. *Mellon Bank v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal citations omitted); *see also Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 418 (E.D. Pa. 2005) ("In order to establish a *prima facie* case, the plaintiff must present specific facts that would allow the court to exercise jurisdiction over the defendant.").

In determining the existence of personal jurisdiction, courts "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker*, 292 F.3d at 368. Once the plaintiff's "allegations are contradicted by an opposing affidavit . . . [the plaintiff] must present similar evidence in support of personal jurisdiction." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009). To counter opposing affidavits, "[p]laintiffs may not repose upon their pleadings []. Rather, they must counter defendant['s] affidavits with contrary evidence in support of purposeful availment jurisdiction." *Id*. at 559. To that end, the "plaintiff must respond to the defendant's motion with 'actual proofs;' 'affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry.'" *Lionti v. Dipna, Inc.*, 2017 WL 2779576, at *1 (E.D. Pa. June 27, 2017) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)).

**DISCUSSION**

The Moe Defendants move to dismiss this action based on the lack of requisite sufficient minimum contacts with Pennsylvania to support personal jurisdiction in this forum. The Moe Defendants have offered the sworn declaration of Melissa Hood, one of Moe's owners, in which she attests, *inter alia*, that: (1) Moe is neither incorporated in, nor maintains a principal place of business in, Pennsylvania, but rather, is a corporate entity incorporated and maintaining its principal place of business in Tennessee; and (2) the Hoods are residents of Tennessee. To

demonstrate sufficient contacts with this forum to sustain personal jurisdiction, Plaintiff has not contested these jurisdictional facts[3] but has instead relied primarily on the Moe Defendants' conduct in allegedly manufacturing a piece of equipment based on Plaintiff's copyrighted works, marketing that piece of equipment on the internet, and joining a trade association. Plaintiff's reliance, however, is misplaced.

A federal court may assert jurisdiction over a nonresident of the forum state to the extent authorized by the law of the forum; here, Pennsylvania. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). Pennsylvania's long-arm statute grants jurisdiction coextensive with that permitted by the due process clause of the Fourteenth Amendment of the United States Constitution. *Id.*; *see also* 42 Pa. Cons. Stat. § 5322(b). Therefore, this Court's analysis must focus on the federal due process requirements. *Applied Tech. Int'l, Ltd. v. Goldstein*, 2004 WL 2360388, at *2 (E.D. Pa. Oct. 20, 2004). A court's constitutional inquiry is guided by the "minimum contacts" test established in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). Under this standard, a plaintiff must show that a nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (internal quotations and citation omitted); *see also Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). The focus of the minimum contacts analysis is "the relationship among the defendant, the forum, and the litigation," *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977), such that the defendant has fair warning that it may be subject to suit in that forum. *Marten*, 499 F.3d at 296.

---

[3] Indeed, the allegations contained in Plaintiff's own amended complaint confirm that Moe is neither incorporated in, nor maintains a principal place of business in, Pennsylvania, the Hoods reside in Tennessee. (*See* Am. Comp., ECF 36, at ¶¶ 9-11).

A federal court must have one of two forms of personal jurisdiction to comport with these principles: either general jurisdiction or specific jurisdiction. *See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-15 (1984)). General jurisdiction allows a court to exercise its jurisdiction over any party that possesses "continuous and systematic" contacts with the forum state, regardless of whether the claim arises out of the party's forum-related activities. *Helicopteros*, 466 U.S. at 415 n.9; *Marten*, 499 F.3d at 296. Where the cause of action has no relation to a corporate defendant's contacts with the forum, general jurisdiction may only be asserted over a corporate defendant if the corporate defendant's "affiliations with the [s]tate are so 'continuous and systematic' as to render them essentially at home in the forum [s]tate." *Daimler*, 571 U.S. at 128 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011)) (quotation marks omitted); *see also Helicopteros*, 466 U.S. at 414.

"The 'paradigm' forums in which a corporate defendant is 'at home,' . . . are the corporation's place of incorporation and its principal place of business . . . ." *BNSF Ry. Co. v. Tyrrell*, __ U.S. __, 137 S. Ct. 1549, 1552 (2017) (citing *Daimler*, 134 S. Ct. at 760); *see also Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016). In addition to the two paradigm bases, general jurisdiction may also arise in the "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19. Applying the *Daimler* analysis, the United States Court of Appeals for the Third Circuit (the "Third Circuit") has held that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Chavez*, 836 F.3d at 223 (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)); *see also*

*Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) ("[I]n our view *Daimler* established that, except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business— the 'paradigm' cases.") (citation omitted).

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear*, 564 U.S. at 924.[4] Applying this law, Pennsylvania courts have exercised personal jurisdiction over individual defendants only where the individual resides in, was served in, or has consented to suit in Pennsylvania. *See Decker v. Dyson*, 165 F. App'x 951, 953 (3d Cir. 2006) ("Under Pennsylvania law, general jurisdiction arises over an individual, non-corporate defendant if the person's domicile or presence was in the state at the time of service of process, or there was consent to suit."); *Farber v. Tennant Truck Lines, Inc.*, 84 F. Supp. 3d 421, 434 (E.D. Pa. 2015).

Alternatively, specific jurisdiction allows the court to hear claims that arise from or relate to the party's contacts with the forum state, such that the defendant should reasonably anticipate being hailed into court in that forum. *Helicopteros*, 466 U.S. at 414 n.8; *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006). In determining whether there is specific jurisdiction over a nonresident defendant, courts undertake a three-part inquiry. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). "First, the defendant must have 'purposefully directed his activities' at the forum." *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Second, the plaintiff's claim must "arise out of or relate to" at least one of

---

[4] The Supreme Court has expressed doubt about whether the concept of general jurisdiction even applies to nonresident individual defendants. *See Burnham v. Superior Court of Cal.,* 495 U.S. 604, 610 n.1 (1990) (plurality opinion) (observing that "[i]t may be that [general jurisdiction] applies only to corporations").

<mark>6</mark>

those purposefully directed activities. *Helicopteros*, 466 U.S. at 414. Third, if the first two requirements are met, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise "comport[s] with fair play and substantial justice." *Burger King*, 471 U.S. at 476 (internal citations omitted); *see also O'Connor*, 496 F.3d at 317.

### *General Jurisdiction*

In their motions to dismiss, the Moe Defendants argue that they have insufficient minimum contacts with Pennsylvania to support personal jurisdiction in this forum. It is undisputed that Moe is neither incorporated in, nor maintains a principal place of business in, Pennsylvania, and the Hoods are residents of Tennessee. Under the legal framework described above, Pennsylvania is not a "paradigm" forum where Moe is "at home" for the purposes of personal jurisdiction. *Daimler*, 571 U.S. at 122.

Nevertheless, Plaintiff argues that general jurisdiction can be exercised over Moe because it has joined a trade association, which has members in Pennsylvania and because of unspecified and unsubstantiated visits the Hoods made to Chant's office in Pennsylvania. (Pltf. Resp., ECF 50, at p. 14).[5] Notably, in support of this argument, Plaintiff ignores the *Daimler* progeny that narrows general jurisdiction over corporate entities to the forum in which the entity is "at home." Regardless, in the post-*Daimler* legal landscape, the mere fact that an out-of-state entity transacts business in Pennsylvania, even *substantial* business, is insufficient to establish that the entity is "at home" in Pennsylvania. *See*, *e.g.*, *Daimler*, 571 U.S. at 138 (emphasizing that even "engage[ment] in a substantial, continuous, and systematic course of business" alone is insufficient to render an entity at home in a forum); *Spear v. Marriott Hotel Servs., Inc.*, 2016 WL 194071, at *3 (E.D. Pa. Jan. 15, 2016) ("Applying the considerations of *Daimler* and *Goodyear*, the mere allegation that

---

[5] Notably, Plaintiff provided no evidentiary support for its contention that the Hoods have been to Chant's offices in Pennsylvania.

defendants operate in the State does not render defendants 'at home' in Pennsylvania and subject it to general jurisdiction here."); *Campbell v. Fast Retailing USA, Inc.*, 2015 WL 9302847, at *2-3 (E.D. Pa. Dec. 22, 2015) (citing *Daimler* and holding that "[t]he allegation that an entity transacts business, even substantial business, in Pennsylvania is insufficient to establish that it is essentially 'at home' in Pennsylvania."); *Farber v. Tennant Truck Lines, Inc.*, 84 F. Supp. 3d 421, 432 (E.D. Pa. 2015) ("A corporation is *not* 'at home' in every state in which it engages in a substantial, continuous, and systematic course of business.'"). Indeed, the Supreme Court has held that regularly occurring sales to a forum state cannot subject a nonresident defendant to general jurisdiction. *See Goodyear*, 131 S. Ct. at 2852, 2856-57. Specifically, in *Goodyear*, the Supreme Court concluded that even "tens of thousands" of a foreign manufacturer's tires entering the forum over a three-year period was insufficient to trigger general jurisdiction because, despite those sales, the foreign corporation was not regarded as "at home" in that state. *Id*. In *Daimler*, the Supreme Court held that despite the fact that ten percent of a nonresident defendant's sales occurred within the forum state, such sales did not render Daimler "at home" in the forum. *Daimler*, 571 U.S. at 139.

Under these binding precedents, this Court finds that Plaintiff's allegation of Moe's intent to sell equipment in Pennsylvania as evidenced by its membership in a trade association fails to show that Moe is "essentially at home" in Pennsylvania, as required under *Goodyear* and *Daimler*. *See Daimler*, 571 U.S. at 122 (explaining that regional offices are not enough to consider a corporation "at home" in a forum in which it does not have its principal place of business or its place of incorporation); *see also Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014) (noting *Daimler* makes it "clear that even a company's engage[ment] in a substantial, continuous, and systematic course of business is alone insufficient to render it at home

8

in a forum") (internal citation and quotations omitted); *Krishanti v. Rajaratnam*, 2014 WL 1669873, at *7 (D.N.J. Apr. 28, 2014) ("It is clear from *Daimler* that the physical presence of a corporation in a state does not necessarily render the corporation 'at home' in that state."). Because Plaintiff has failed to make a showing that Moe's contacts with Pennsylvania "are so continuous and systematic as to render it essentially at home in this state," *Daimler*, 571 U.S. at 139 (internal quotations and citation omitted), this Court lacks general jurisdiction over Moe.

As to the individual defendants, the Hoods, it is undisputed that they reside in Tennessee, that they were served with original process in Tennessee, and that they have not consented to jurisdiction in Pennsylvania. As such, there is no basis to exercise general jurisdiction over the Hoods in this forum. *See Decker*, 165 F. App'x at 953.

### *Specific Jurisdiction*

Plaintiff also argues that this Court should exercise specific jurisdiction over the Moe Defendants. As noted, specific jurisdiction allows the Court to hear claims that arise from or relate to the defendant's contacts with the forum state, such that the defendant should reasonably anticipate being hailed into court in the forum state. *Helicopteros*, 466 U.S. at 414 n.8. In response to the Moe Defendants' challenge to the Court's specific jurisdiction, Plaintiff makes argument only under the *Calder* effects test. [6] (*See* Pltf. Resp., ECF 50, at p. 9). Because it is Plaintiff's burden to sustain personal jurisdiction once challenged, *Pinker*, 292 F.3d at 368, this Court will limit its analysis to Plaintiff's claims against the Moe Defendants under the *Calder* effects test.

Under the *Calder* effects test, specific jurisdiction exists over intentional tort claims where a plaintiff shows that: (1) the defendant committed an intentional act; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered

---

[6] This test was first articulated by the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984).

by the plaintiff as a result of that act; and (3) the defendant expressly aimed its tortious conduct at the forum such that the forum can be said to be the focal point of the activity. *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998); *see also Marten*, 499 F.3d at 297. The *Calder* effects test is not satisfied by the "mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there." *IMO Indus.*, 155 F.3d at 266. Rather, a plaintiff must "point to other actions that adequately demonstrate [] that the defendants targeted (or 'expressly aimed' their conduct at) the forum." *Id*. "There is a critical difference between an act which has an effect in the forum and one directed at the forum itself . . . . absent some conduct by defendant directed at Pennsylvania rather than simply directed at plaintiff, Pennsylvania is not a reasonably foreseeable forum." *Surgical Laser Techs., Inc. v. C.R. Bard, Inc.,* 921 F. Supp. 281 (E.D. Pa. 1996) (granting motion to dismiss for lack of personal jurisdiction notwithstanding foreseeability of harm to plaintiff in Pennsylvania). In addition, "[s]imply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself to meet this requirement." *IMO Indus.*, 155 F.3d at 265.

Typically, satisfying this test requires "some type of 'entry' into the forum by the defendant." *Id*. In cases involving intellectual property (like the case *sub judice*), the Third Circuit opined:

> In *Calder* as in all the other cases that have come to our attention in which jurisdiction over a suit involving intellectual property (when broadly defined to include reputation, so that it includes *Calder* itself) was upheld, the defendant had done more than brought about an injury to an interest located in a particular state. The defendant had also "entered" the state in some fashion, as by the sale (in *Calder*) of the magazine containing the defamatory material.

*Id.* (quoting *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club*, 34 F.3d 410, 412 (7th Cir. 1994)).

Here, Plaintiff's claims against the Moe Defendants are premised on Plaintiff's allegation that they manufactured and sold a piece of equipment based on Plaintiff's copyrighted works. To satisfy the *Calder* effects test, Plaintiff argues that the Moe Defendants "expressly targeted a Pennsylvania corporation by reproducing and/or creating derivative works based on the Copyrighted Works, owned by Chant." (Pltf. Resp., ECF 50, at p. 11). None of the allegations in Plaintiff's amended complaint or in Mr. Chant's declaration, however, evidence the requisite targeting of Pennsylvania. To the contrary, all of the conduct underlying Plaintiff's claims against the Moe Defendants occurred in and was directed at Tennessee.

As noted above, Plaintiff's claims against the Moe Defendants are premised entirely upon their alleged participation in the manufacture of the offending equipment. The manufacturing of the offending equipment occurred in Tennessee. Further, Plaintiff has presented no facts beyond mere speculation that the equipment was sold to and/or marketed to anyone in Pennsylvania. As such, the "focal point" of the Moe Defendants' alleged tortious conduct was clearly Tennessee, not Pennsylvania. As repeatedly recognized, the *Calder* effects test is not met by simply showing that a defendant engaged in wrongful conduct with an entity known to be located in the forum state. *IMO Indus.*, 155 F.3d at 265. Rather, the defendant's conduct ***itself*** must be targeted at Pennsylvania. *Id.* Here, all of the Moe Defendants' alleged tortious conduct occurred in and was directed at Tennessee. As such, Plaintiff has not met its burden of establishing specific jurisdiction over Plaintiff's intentional tort claims against the Moe Defendants.

Plaintiff's apparent reliance on the Moe Defendants' presence on the internet is also misplaced. When a defendant's alleged contact with the forum state is established through the

internet (as Plaintiff suggests here), a court must determine "whether a defendant established minimum contacts through cyberspace." *Ackourey v. Sonellas Custom Tailors*, 573 F. App'x 208, 211-12 (3d Cir. 2014). In making this determination, courts consider the sliding scale approach set forth in *Zippo Manufacturing Company v. Zippo Dot Com, Incorporated*, 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997). *See Toys "R" Us*, 318 F.3d at 452 (3d Cir. 2003) (referring to *Zippo* as "a seminal authority regarding personal jurisdiction based upon the operation of an Internet web site"). Under the *Zippo* sliding scale approach, the likelihood of establishing personal jurisdiction is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo,* 952 F. Supp. at 1124. On one end of the scale (where personal jurisdiction can be established) are "situations where a defendant uses an interactive commercial website to actively transact business with residents of the forum state." *Ackourey*, 573 F. App'x at 211. At the other end of the scale (where personal jurisdiction is lacking) are "situations where a passive website merely provides information that is accessible to users in the forum state). *Id*. When a case falls between these two extremes, courts examine "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id*. at 211-12 (quoting *Zippo*, 952 F. Supp. at 1124 and citing *Toys "R" Us*, 318 F.3d at 452).

The Third Circuit has emphasized, however, that "the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world." *Toys "R" Us*, 318 F.3d at 454. Instead, "there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Id*. A defendant has "purposefully availed" itself if its website repeatedly attracts business from a forum or knowingly conducts business with forum state residents via the

site. *Id.* at 452; *Doe v. Hesketh*, 15 F. Supp. 3d 586, 597 (E.D. Pa. 2014) (stating that "the *Zippo* sliding scale requires some evidence of commercial interactivity with the forum state as where the *Zippo* defendants solicited subscribers and entered into contracts to furnish services to Pennsylvania customers"); *see also UHS of Delaware, Inc. v. United Health Services, Inc.*, 2013 WL 12086321, at *9 (M.D. Pa. Mar. 26, 2013) ("[T]he hallmark of a commercial site is not . . . the users' submission or receipt of information, but the clear presence of deliberate and repeated online business transactions through which the host provides a good or service in return for monetary compensation.").

Here, the "level of interactivity and commercial nature" of Moe's website is minimal. *Zippo*, 952 F. Supp. at 1124. As described in Ms. Hood's declaration (and nowhere contested by Plaintiff), Moe's website contains general information regarding the type of equipment that Moe sells as well as general contact information. No products are available for sale on the website. As such, the Moe Defendants do not conduct any business through the website.

In the absence of any substantiated commercial nature to the website at issue or any evidence of purposeful solicitation or targeting of Pennsylvania residents by the website, this Court finds that Moe's website is "essentially passive," *Ackourey*, 573 F. App'x at 212, as it "does little more than make information available to those who are interested in it[.]" *Zippo*, 952 F. Supp. at 1124. Such passive websites are insufficient for the exercise of personal jurisdiction. *Id.* Similarly, Plaintiff's contention that the Moe Defendants displayed their various equipment on social media sites is also insufficient to show purposeful targeting of Plaintiff or Pennsylvania.

Accordingly, Plaintiff has not met its burden of establishing personal jurisdiction over the Moe Defendants.[7]

**CONCLUSION**

For the reasons set forth herein, the Moe Defendants' motions to dismiss are granted. An appropriate Order will follow this Memorandum Opinion.

*NITZA I. QUIÑONES ALEJANDRO*, U.S.D.C. J.

---

[7] In its response, Plaintiff requests leave to conduct discovery targeted to the issue of personal jurisdiction. No amount of discovery, however, could change the undisputed facts that Moe is neither incorporated, nor maintains a principal place of business, in Pennsylvania. Nor will any discovery change the undisputed fact that Plaintiff's claims do not arise out of any of the Moe Defendants' purported contacts with Pennsylvania. As such, Plaintiff's request for discovery on this issue is denied.